UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  07-20760-CR-UNGARO/SIMONTON

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

MEDARDO CABRERA,

      Defendant.

_____/

<u>**ORDER FINDING DEFENDANT COMPETENT TO STAND TRIAL**</u>

      This matter arose upon Defendant's Motion for a Hearing to Determine the Mental Competency of the Defendant (DE ## 17, 18, 28).  The Honorable Ursula Ungaro, United States District Judge, referred this matter to the undersigned Magistrate Judge to take all necessary and proper action as required by law with respect to that motion (DE # 31). An evidentiary hearing was held on June 3, 2008 and June 5, 2008, at which time the Court heard the testimony of expert forensic psychiatrist Sanford Jacobson, M.D., and expert forensic psychologists Lazaro Garcia, Ph.D., and Rodolfo A. Buigas, Ph.D., and received as evidence six expert reports regarding the defendant's competence to stand trial.  Based upon the evidence presented at the hearing, and for the reasons stated below, the undersigned finds that Defendant Medardo Cabrera is competent to stand trial.

      I.     <u>BACKGROUND</u>

          A.  <u>The Presently Pending Indictment</u>

      Defendant Medardo Cabrera is charged in a one-count Indictment with being a felon in possession of a firearm on or about December 10, 2005, in violation of 18 U.S.C.

§§ 922(g)(1) and 924(e)(1).  Based upon his alleged status as an armed career criminal, he is facing a mandatory minimum sentence of fifteen years of incarceration and a maximum potential sentence of life imprisonment (DE # 1).  The Defendant has been held in custody at the Federal Detention Center in Miami, Florida, since his arrest (DE # 9).

### B.  The Prior State Court Proceedings

It is undisputed that the events which form the basis for this Indictment were initially the basis for charges brought against the Defendant by the State of Florida on November 26, 2006.  The Defendant was released on bond during those proceedings and resided with his sister, Marta Cabrera.  During the course of the proceedings in state court, four court-ordered psychological or psychiatric evaluations were performed on the Defendant regarding his competence to stand trial.  Specifically, he was examined by psychologist Lazaro Garcia, Ph.D. on July 23, 2007 and November 13, 2007; by psychiatrist Sanford Jacobson, M.D. on September 7, 2007; and by psychiatrist Yanira M. Olaya, M.D. on October 2, 2007.  Although Dr. Garcia initially opined that the Defendant was competent to stand trial, he concluded in his November 13, 2007, examination that the Defendant's condition had deteriorated to the point where he was no longer competent.  In addition, both of the psychiatrists opined that the Defendant was not competent to stand trial.  On December 17, 2007, the state court found the Defendant incompetent to stand trial.

### C.  The Competency Proceedings in the Case at Bar

The presently pending Indictment was returned by the grand jury on September 20, 2007; however, the Defendant was not arrested until December 18, 2007.  Thereafter, based upon the above-mentioned reports and finding of incompetence in the state proceedings, the Defendant filed a motion for a competency hearing pursuant to 18

2

U.S.C. § 4241(a).[1]  The Court granted the motion, and ordered that a psychiatric/psychological examination of the Defendant be performed by the medical staff of the Bureau of Prisons, pursuant to 18 U.S.C. §§ 4241 and 4247(b), and that a report conforming to the requirements of 18 U.S.C. § 4247(c) be prepared.[2]  Dr. Rodolfo Buigas performed the evaluation at FDC, where the Defendant has been incarcerated since his arrest, and, on April 3, 2008, issued his report finding the Defendant competent to stand trial.

Thereafter, the Defendant arranged for a re-examination by psychologist Lazaro Garcia on May 17, 2008.  Dr. Garcia also found that the Defendant was competent to stand trial, although he found that the Defendant met the criteria for competence

---

[1]  Title 18, United States Code, Section 4241(a), provides that the Court shall order a hearing regarding a defendant's competency to stand trial "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  The Court has the authority to order that a psychiatric or psychological examination be conducted, and that a report be filed with the court, prior to the date of such hearing.  18 U.S.C. § 4241(b).  This examination, report, and hearing are to be conducted and prepared in accordance with the provisions of 18 U.S.C. § 4247.  18 U.S.C. §§ 4241(b), 4241(c).

[2]  Pursuant to 18 U.S.C. § 4247(c), report of examination shall include:

(1) the person's history and present symptoms;
(2) a description of the psychiatric, psychological, and medical tests that were employed and their results;
(3) the examiner's findings; and
(4) the examiner's opinions as to diagnosis, prognosis, and–
     (A) . . . whether the person is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

minimally, and was likely to deteriorate under stress or if he discontinued his medications.

An evidentiary hearing was held on June 3, 2008 and continued on June 5, 2008.[3]

II.     **FINDINGS OF FACT**

The Court has carefully considered the testimony of the three expert witnesses, as well as the testimony of the defendant's sister, Marta Cabrera, and the expert reports that were admitted into evidence.  Due to the sensitive nature of some of the personal and medical information contained in those reports, the contents are not recounted verbatim in this Order.  The undersigned credits the testimony of Dr. Buigas, however, where it conflicts with that of the other experts.  Dr. Buigas and Dr. Garcia are the only examiners who have seen the defendant recently, and Dr. Buigas spent significantly more time with the defendant, reviewing records and consulting with others who had observed the defendant functioning inside FDC.  Dr. Jacobson candidly admitted that he had not examined the defendant since September 7, 2007, and that he would not challenge the ultimate opinions given by Dr. Garcia and Dr. Buigas regarding the present competence of the defendant.

It is clear that the defendant has a long term history of psychological problems, and was being treated by a psychiatrist at Jackson Memorial hospital prior to his arrest

---

[3]  At a status conference held on April 15, 2008, the parties requested that the hearing be delayed for a period of time to permit the government to consider whether to proceed with the charges in this case.  Therefore, the competency hearing was set for May 6, 2008.  On May 1, 2008, the defendant requested a 30-day continuance of the hearing so that the three mental health professionals he intended to call could be available.  This request was granted, and the hearing was continued until June 3, 2008.  Due to an unforeseen personal medical issue, the government's expert witness was not available on June 3, 2008, and the hearing was continued until June 5, 2008, for his testimony.  These proceedings are relevant only for the purpose of explaining why the this Order is entered so close to the trial date in this case.

in the case at bar.  When he was first incarcerated at FDC, he was taking various medications to treat these issues.  Based upon the evaluation when the defendant was admitted in December 2007, those medications were adjusted.

The following is a brief recitation of the results of the various forensic psychological and psychiatric examinations conducted of the defendant.

Dr. Lazaro Garcia examined the defendant on July 23, 2007, using a Mental Status Examination, Psychological Interview, and Review of Records as the examination procedure.  At the time, Dr. Garcia opined that the defendant had an acceptable appreciation of the charges against him, had an acceptable appreciation of the range and nature of the possible penalties, he had a questionable understanding of the adversary nature of the legal process, but was deemed trainable, had the capacity to disclose to his attorney the facts surrounding the offense, had the ability to manifest appropriate courtroom behavior and to testify relevantly and coherently on his own behalf, and appeared motivated to help himself in the legal process.

On September 7, 2007, Sanford Jacobson, M.D. conducted a psychiatric evaluation of the defendant.  Dr. Jacobson noted that the defendant's verbal abilities were constricted, that his emotional responses were blunted and constricted, that he was variably oriented, and opined that the defendant was suffering from a mild dementia.  Although the defendant did not appear motivated, Dr. Jacobson did not believe that the defendant was malingering or feigning his symptoms.  Dr. Jacobson found that the defendant was incompetent to proceed to trial since although he had some factual understanding of the charges, he lacked a rational understanding of them, nor could he communicate with counsel with a reasonable degree of rational understanding.  As to specific factors, the defendant was rated unacceptable with

respect to (1) his appreciation of the charges or allegations against him; (2) the range and nature of possible penalties; (3) the capacity to understand the adversary nature of the legal process; (4) the capacity to disclose to counsel facts pertinent to the proceedings at issue; and (5) the capacity to testify relevantly.  Dr. Jacobson rated the defendant's ability to manifest appropriate courtroom behavior as questionable.

At the evidentiary hearing, Dr. Jacobson testified that since he had only seen the defendant once, it was difficult to make a prognosis regarding his future competency, but that he did not believe there would be a dramatic improvement.  Dr. Jacobson also testified however, that he believed the defendant may have been reluctant to disclose some information to him, and that it was possible the defendant had more knowledge than what he disclosed to Dr. Jacobson.  Finally, Dr. Jacobson testified that he could not challenge the competency determinations made recently by Dr. Garcia and Dr. Buigas since the Defendant may have been more motivated to provide information to them at the present than he was at the time of Dr. Jacobson's evaluation.

Yanira Olaya, M.D., who did not testify, examined the defendant on October 2, 2007.  The examination consisted of a seventy minute interview with the defendant and his sister, Marta Cabrera.  She also reviewed the arrest affidavit in the state case.  Dr. Olaya diagnosed him with dementia, depression NOS, and possible history of alcohol or substance dependence.  She opined that he had significant cognitive limitations that were not likely to improve.  She reviewed eight criteria with respect to her determination that he was not competent to stand trial, and found he was not competent with respect to all eight: he did not appreciate the charges or allegations against him; he did not appreciate the range and nature of the possible penalties; he did not have the capacity to understand the adversary nature of the legal process; he did not have the capacity to

disclose to counsel facts pertinent to the proceedings and issues; he did not have the capacity to assist his attorney in planning his defense; he did not have the capacity to manifest appropriate courtroom behavior; he did not have the capacity to challenge prosecution witnesses; and he did not have the capacity to testify relevantly in court.

Dr. Garcia examined the defendant again on November 13, 2007. At that time, using the same examination procedure, Dr. Garcia noticed a significant mental deterioration. Dr. Garcia found that the defendant's abilities were questionable or unacceptable with respect to each of the categories described above.

Rodolfo Buigas, Ph.D., examined the defendant at the Federal Detention Center in Miami, Florida, where the defendant has been in custody since his arrest in December 2007. He saw the defendant approximately seven times between February 26, 2008 and March 20, 2008, for a total of 6.25 hours. Some of the meetings consisted of discussions only, and at other times various tests were administered. The examination procedure consisted of clinical interviews, mental status examination, Trail Making Test (TMT), Test of Memory Malingering (TOMM), Validity Indicator Profile - nonverbal subtest (VIP), Minnesota Multiphasic Personality Inventory - Second Edition (MMPI), and the Georgia Court Competency Test - Mississippi State Hospital (GCCT-MSH), and the Comprehensive Test of Nonverbal Intelligence (C-TONI). In addition, Dr. Buigas reviewed the medical records of the defendant, and consulted with the doctors at FDC who had treated the defendant, as well as the unit staff who observed the defendant 24 hours a day.

Dr. Buigas diagnosed the defendant as Malingering, and as suffering from Polysubstance Dependence with Physiological Dependence, In a Controlled Environment, and Depressive Disorder, Not Otherwise Specified, as well as Antisocial

7

Personality Disorder.  Dr. Buigas noted that the determination of other possible conditions was complicated by his lack of candid responses during the examination.

Dr. Buigas testified that according to the results of the C-TONI test, the defendant has a nonverbal IQ of 47, which is in the mild to moderate retardation level of intellectual functioning.  However, Dr. Buigas did not believe that this was an accurate measure of the defendant's intelligence.  This was based on the fact that the behavior of the defendant observed by the unit staff was inconsistent with such a low IQ, as well as the results of other tests which reflected that the Defendant was not exerting his best efforts and was malingering.

Dr. Buigas also administered the TMT, which detects neuropsychological impairment, and the defendant scored in the severely impaired range.

The defendant was given the TOMM to evaluate his reported memory difficulties.  According to Dr. Buigas, the results of this test showed dramatically that Mr. Cabrera was fabricating his memory impairment.  In addition, the results of the MMPI strongly reflected that the defendant was exaggerating his symptoms.  The VIP test results reflected that the defendant was using no effort in responding to the test–the results indicated a purely random response.

Finally, the defendant was rated competent on the GCCT-MSH, which is a test specifically designed to determine whether a defendant is competent to stand trial.  The defendant understood the adversarial nature of the proceedings and the role of the players; he also realized that if he was found guilty he could go to jail, although he refused to give any estimate of the sentence that could be imposed.  He was able to state the charge against him, and give a brief description of the alleged offense.  Dr. Buigas concluded:

8

> Essential to the issue of competency to stand trial is whether or not a mental disease or defect is present and interfering with the defendant's ability to understand the charges against him, his ability to properly assist in his own defense, and the ability to understand the nature and consequences of the proceedings against him.  While the true extent of his legal knowledge and abilities was difficult to determine given his volitionally suppressed presentation, he demonstrated no symptoms of an active mental illness that would interfere with his rational understanding of the proceedings or his ability to assist toward his defense.   Throughout the evaluation, the defendant's behavior appeared purposeful and under his volitional control.  He has the ability to understand the legal process and assist in his own defense, if motivated to do so.  Hence, the defendant's degree of trial competency is satisfactory....

Thereafter, on May 17, 2008, Dr. Lazaro Garcia re-evaluated the defendant.  His examination procedure included the Psychological Interview, Mental Status Examination, Millon Clinical Multiaxial Inventory-III, Wechsler Adult Intelligence Scale, Test of Memory Malingering, Bender Gestalt Test II, and a Review of Records.  Mr. Cabrera's general cognitive ability was rated as in the extremely low range of intellectual functioning.

The results of the Test of Memory Malingering (TOMM) administered by Dr. Garcia, like the results of the same test administered by Dr. Buigas, raised the possibility of malingering.  However, Dr. Garcia also stated that poor attention is another possible explanation.

Dr. Garcia found that Mr. Cabrera was oriented to time, place and person, and his memory for recent and remote events was adequate.  His responses were generally consistent with information he had previously provided to Dr. Garcia.  His thought processes were productive (although on the under-productive side), and goal oriented.  Mr. Cabrera exhibited no bizarre behavior.

With respect to the Millon Clinical Multiaxial Inventory, Dr. Garcia stated that the defendant's  responses suggested a tendency to emphasize psychological problems and

9

symptoms, and that this might be a cry for help.

Dr. Garcia stated that Mr. Cabrera had limited cognitive development and education, but that he met all of the criteria for competence except for his understanding of the adversary nature of the legal process, and Dr. Garcia opined that the defendant was trainable in this regard.  Specifically, Dr. Garcia found that defendant Cabrera had an acceptable appreciation of the charges against him and their seriousness, that he had an acceptable appreciation of the range and nature of the possible penalties, he had the capacity to disclose pertinent facts to his attorney, he had the ability to manifest appropriate courtroom behavior and testify relevantly and coherently in his own behalf, and he seemed motivated to help himself in the legal process.

Dr. Garcia concluded that the defendant is competent to stand trial, although he suffers from chronic psychiatric problems and has been diagnosed with Major Depression, Recurrent with Psychotic Features.  Dr. Garcia did not agree with Dr. Buigas that the defendant was malingering, although he recognized that the results of both TOMM tests supported this diagnosis.  Dr. Garcia, however, found that it was likely that Mr. Cabrera "failed to sustain his attention and randomly responded to the multiple choice format of this test."

Finally, Dr. Garcia opined that "Mr. Cabrera's mental condition is likely to fluctuate and deteriorate depending on the treatment he receives and stressors, and this accounts for he differences in opinions seen across several of his evaluations."

Mr. Cabrera's sister testified regarding Mr. Cabrera's long term psychological difficulties, and that she had ensured that he received his medications when he was living with her after he was released on bond during the course of the state court proceedings.

10

III.     **ANALYSIS AND CONCLUSIONS OF LAW**

     A.     **FRAMEWORK FOR ANALYSIS**

At the commencement of the evidentiary hearing, the parties agreed that the issue to be determined was governed by 18 U.S.C. § 4241(d), which provides that if, after a hearing, "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.... for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward."   Thus, the initial burden of persuasion is on the defendant to establish by a preponderance of the evidence that he is not competent.

Thereafter, if there is an adjudication of incompetency, and the defendant is committed to the Attorney General as stated above, pursuant to 18 U.S.C. § 4241(e), the burden of persuasion shifts; *i.e.*, the court must find by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense.

At the conclusion of the evidentiary hearing in the case at bar, defense counsel suggested that, because the defendant had been adjudicated by the state court to be incompetent to stand trial in December 2007, this Court was required to use the §4241(e) standard, and could not enter an Order of Competency unless the Court found by a preponderance of the evidence that the defendant had regained competency.  Since this

11

was a newly raised issue, as to which neither side had provided any legal authority, and due to the impending trial date, the undersigned permitted both sides to file supplemental authority by noon on June 6, 2008.  Defense counsel thereafter provided the Court with *Brown v. Warden, Great Meadow Correctional Facility*, 682 F.2d 348 (2d Cir. 1982).  The government did not provide supplemental authority, but presumably relies upon the argument made at the evidentiary hearing that the proceedings in state court are not binding on this Court since the United States and the State of Florida are separate sovereigns.

The undersigned has reviewed the case submitted by defense counsel, and conducted her own research, and has not located any authority which is directly on point–i.e., which discusses the effect of a state court's determination of incompetence upon subsequent proceedings in federal court.  It is not necessary to decide this issue in the case at bar, however, because the undersigned finds that, assuming the Court must find by a preponderance of the evidence that Defendant Cabrera is competent, that burden is met.

Although Dr. Buigas and Dr. Garcia differed as to whether Mr. Cabrera was malingering, they both agreed that he was presently competent to stand trial.  To the extent that their testimony differed, the undersigned credits the testimony of Dr. Buigas, and finds that the defendant was malingering.  This determination is based upon the strong evidence of malingering reflected by the test scores, as well as by the difference between the low scores received and the defendant's observable behavior in the institution in settings apart from the psychological evaluation.  In addition, there is a strong motive for secondary gain since the defendant is facing a significant period of incarceration if convicted on these charges.

12

Although the defendant is suffering from a mental disease,[4] he is receiving appropriate treatment, and it does not affect his ability to understand the nature and consequences of the proceedings against him or to assist in his defense.

Therefore, based on the reasons set forth above, the undersigned hereby

ORDERS AND ADJUDGES that Defendant Medardo Cabrera is competent to stand trial in this case.

DONE AND ORDERED in chambers in Miami, Florida, this 6th day of June, 2008.

_Andrea M. Simonton_
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies to:
The Honorable Ursula Ungaro, United States District Judge
All counsel of record via CM/ECF

---

[4]  Although Dr. Buigas indicated the possibility of additional diagnoses of mental disorders that he did not make due to the lack of reliable responses from the Defendant, the undersigned assumes for purposes of this Order that the Defendant does indeed suffer from  Major Depression, Recurrent with Psychotic Features, which was the diagnosis given by the staff psychiatrist at FDC, and as to which Dr. Garcia stated he concurred.  He is receiving treatment for this condition at FDC, and the presence of this disease does not alter the competency decision.

13